## 47991. GREER v. LIFSEY.

SUBMITTED MARCH 6, 1973 — DECIDED APRIL 13, 1973.

*Sanders, Hester, Holley, Askin & Dye, William J. Williams,* for appellant.

*Harrison & Jolles, Charles F. Miller, Jr.,* for appellee.

CLARK, Judge. In this appeal we are called upon to decide the validity of a personal services contract made by an entertainer, Cortez Greer, with Leonard H. Lifsey as his agent.

The contract designates Greer as "Artist" and Lifsey and another individual not here involved as "Managers." It provided for the managers "to act as full and exclusive agents of Artist . . . pertaining to any and all contracts, recordings, personal appearances or in any other matter wherein Artist appears as Entertainer." Its language shows the intentions of the parties broadly to cover every area of the musical field and expressly "not to be limited to the following, to wit: Personal appearances, recordings, endorsements, motion pictures, royalties, radio and television appearances and any other entertainment aligned [sic] thereto." The key paragraph reads: "Artist does fully agree, obligate and bind himself hereby that he will not for a period of 5 years from the date of this agreement, contract, agree or obligate himself for any entertainment, recording, personal appearance in the musical field, without the prior writ-

ten consent of managers hereto, and fully agrees to pay managers in the event this contract is broken by artist, the sum of 50% of the gross receipts of the result of any contract, agreement, appearance, or recording done without the prior written approval and consent of managers."

Alleging breach of this provision by the artist having without the manager's written consent contracted for entertainment and personal appearances, Lifsey filed this suit for monetary damages. In answering, among other defenses, Cortez Greer attacked the agreement as being legally invalid, this contention being based principally upon the contract reciting "no limit as to the geographical area." (R.12). Making use of the procedural device provided in Section 12 (d) of the Civil Practice Act (Code Ann. § 81A-112), defendant Greer moved for a determination by a preliminary hearing as to the merits of this special defense. The trial court ruled adversely to the Artist but granted a certificate of immediate review which authorized this direct appeal.

1. As a negative covenant ancillary to a contract of employment, it is essential to the validity of the contract that it contain a reasonable limitation both as to time and territory. Thus, *Edwin K. Williams & Co.—East v. Padgett,* 226 Ga. 613 (176 SE2d 800) ruled void a contract containing a reasonable time limitation but having no limit as to territory in which the employee was permitted to solicit business after termination. It is obvious that the contract before us is completely silent as to geographical area. Recognizing this absence of a territorial limitation, counsel for plaintiff argues "In fact, to have limited this appellant who is an accomplished artist and entertainer as an individual, in a geographical sense would have been unreasonable in that it is a matter of common knowledge that artists and entertainers of substance perform over wide spread areas of the entire civilized world." We are unable to accept this thesis, even though the record shows

the artist to have entertained in various places in our country as well as in Puerto Rico and the Bahamas.

"What is reasonable in a restrictive covenant is a matter of law for the court to decide, allowing greater latitude for covenants relating to the sale of a business than for covenants ancillary to employment. [Cits.]" *Watkins v. Avnet,* 122 Ga. App. 474, 476 (177 SE2d 582). "There are certain well-established tests which control in the determination of whether the limitations are reasonable. 'The court will consider the nature and extent of the trade or business, the situation of the parties, and all the other circumstances.' [Cits.] To be valid, the covenant in such a contract must be reasonably necessary to protect the interest of the party in whose favor it is imposed, and must not unduly prejudice the interests of the public. The restrictions imposed upon the promisor must not be larger than are necessary for the protection of the promisee. [Cit.]" *Orkin Exterminating Co. v. Dewberry,* 204 Ga. 794, 802 (51 SE2d 669). "[C]ontracts in unreasonable restraint of trade are contrary to public policy and void, because they tend to injure the parties making them, diminish their means of procuring livelihoods and a competency for their families; tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions, and expose them to imposition and oppression; tend to deprive the public of the services of men in the employments and capacities in which they may be most useful to the community as well as to themselves; . . ." *Rakestraw v. Lanier,* 104 Ga. 188, 194 (30 SE 735, 69 ASR 154).

The *Orkin* case, supra, generally considered a leading case on this subject, indicates that a territorial restriction to that already in use at the making of the contract is reasonable and that added territory might also be included for which there are imminent and concrete plans of expansion. But our Supreme Court goes on to say at

page 807: "Certainly, the inclusion of such territory in a restrictive covenant is broader than reasonably necessary to protect the employer where there is no anticipation of immediately extending the company's business into the prohibited territory, but the anticipation is nothing more than a hope, based upon contingencies, which may or may not occur. Whatever may be the rule with regard to contracts of sale, it is our opinion, in view of the repeated rulings that employment contracts require more limited restraints, that such a broad territorial limitation unduly restricts the employee without any reasonable necessity therefor." The Supreme Court then uses language at page 808 directly applicable to our case: "In any event, it covers territory in which the employer has never engaged in business; and the territorial scope of such a contract is not made more reasonable by the fact that the employer entertains the hope that some day its business may extend to every city within the State. Such a contract is 'unreasonable, not necessary for the protection of the party in whose favor the restraint was imposed, oppressive to the party restrained, and opposed to the interests of the public.' "

A similar ruling is in *Foster v. Union Central Life Ins. Co.,* 103 Ga. App. 420, 424 (119 SE2d 289) where our court said "[I]t thus becomes inferable that this covenant would prevent the defendant from working anywhere in the United States at his employment for a space of two years. Obviously, this condition has nothing to do with the legitimate business interests of the employer, and is, as to the employee, completely unreasonable in territorial extent. [Cits.]"

The contract sub judice would prevent defendant from working anywhere for a five year period except with plaintiff's consent and is therefore void. Other cases of similar import are *Artistic Ornamental Iron Co. v. Wilkes,* 213 Ga. 654 (100 SE2d 731); *Thomas v. Coastal Industrial Services, Inc.,* 214 Ga. 832 (108 SE2d 328); *Stein Steel &*

*Supply Co. v. Tucker,* 219 Ga. 844 (136 SE2d 355); *Dixie Bearings, Inc. v. Walker,* 219 Ga. 353 (133 SE2d 338); *Mason &c. Mfg. Co. v. Jablin,* 220 Ga. 344 (138 SE2d 660); *Silverberg v. Photo-Marker Corp.,* 223 Ga. 383 (155 SE2d 385); *Taylor Publishing Co. v. Jones,* 226 Ga. 832 (177 SE2d 655); and *Moore v. Dwoskin,* 226 Ga. 835 (177 SE2d 708). See also "Covenants Not to Compete—Some Problems of Draftsmanship" by Paul L. Hanes, 1 Ga. State B. J. 220.

*Judgment reversed. Hall, P. J., and Evans, J., concur.*